## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) TONY ALMEIDA, (2) LESLIE ALMEIDA, (3) CARY CUYLER, (4) SUSAN CUYLER, (5) LANA GARDNER, (6) CHARLES GARDNER (7) CHRISTIAN LARSEN, (8) KAREN B. LARSEN, (9) THOMAS RIBAUDO, and (10) CORI RIBAUDO, Individually and on Behalf of All Others Similarly Situated,** | ) ) ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) **Case No. 17-cv-00126-JED-FHM** ) **(CLASS ACTION)** |
| **v.** | ) ) **The Honorable John E. Dowdell** |
| **(1) BOKF, NA, d/b/a BANK OF OKLAHOMA,** | ) ) |
| **Defendant.** | ) |

---

## PLAINTIFFS' OBJECTION TO DEFENDANT
## BOKF, NA'S MOTION TO DISMISS AND BRIEF IN SUPPORT

---

Randall K. Calvert, OBA #14154
Rabindranath Ramana, OBA #12045
Andrew R. Davis, OBA #32763
CALVERT LAW FIRM
1041 NW Grand Boulevard
Oklahoma City, Oklahoma 73118
Telephone: (405) 848-5000
E-mail: rcalvert@calvertlaw.com
          rramana@calvertlaw.com
          adavis@calvertlaw.com

Nicholas J. Taldone, Esq.
9020 Rancho Del Rio Dr., Suite 101
New Port Richey, FL 34655
FBN: 102598
Telephone: (727) 375-0390
Fax: (727) 494-1036
Primary E-mail: taldonelaw@msn.com
Secondary E-mail: taldonenick@gmail.com

*Attorneys for Plaintiffs*

Dated: May 8, 2017

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.      STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      In General, Claims I Through VI Adequately Plead Cognizable Tort Claims.. . . 5

                1.      Relevant Body of Law Concerning the Duties of an Indenture Trustee.
                        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                2.      BOKF's Extra-Contractual Duties.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                3.      BOKF Breached Its Duties, Giving Rise to Tort Liability.. . . . . . . . . . . . . 8

                        a.      BOKF's Breaches of Its Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                        b.      BOKF Is Subject to Tort Liability. . . . . . . . . . . . . . . . . . . . . . . . . 9

                        c.      Plaintiffs' Tort Claims Are Not Based on Breach of Contract and Are
                                Not Precluded by Any Exculpatory Clause. . . . . . . . . . . . . . . . . 10

        B.      Each of Plaintiffs' Causes of Action Properly State A Claim for Relief.. . . . . . . 11

                1.      The Choice of Law Provisions Do Not Apply to Plaintiffs' Tort Claims. 11

                2.      Plaintiffs' First Amended Complaint Properly States a Claim for Aiding and
                        Abetting Fraud. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                3.      Plaintiffs Have Properly Stated a Claim for Aiding and Abetting Breach of
                        Fiduciary Duty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                4.      Plaintiffs Have Properly Stated Claims for Gross Negligence, Negligence,
                        and Breach of Fiduciary Duty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                5.      Plaintiffs Have Properly Stated a Claim for Civil Conspiracy. . . . . . . . . 21

                6.      Plaintiffs Have Properly Stated a Claim for Violations of the Georgia Blue
                        Sky Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

i

## **TABLE OF AUTHORITIES**

### **CASES**

*Adelphia Recovery Trust v. Bank of Am.*, N.A.,
    624 F. Supp. 2d 292, 310 (S.D.N.Y. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*AG Capital Funding Partners L.P. v. State St. Bank & Trust Co.*,
    896 N.E.2d 61, 66–67 (N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 20, 21

*AMBAC Indem. Corp. v. Bankers Trust Co.*,
    573 N.Y.S.2d 204, 207–08 (N.Y. Sup. Ct. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Barsh v. Mullins*,
    1959 OK 2, 338 P.2d 845, 847. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Beck v. Mfrs. Hanover Trust Co.*,
    632 N.Y.S.2d 520, 527 (N.Y. App. Div. 1995). . . . . . . . . . . . . . . . . . . . . . . 6, 7, 10, 20, 21

*Benton v. Merrill Lynch & Co.*,
    524 F.3d 866 (8th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, NA*,
    ___ F. Supp. 3d. ___, 2017 WL 1194683 (S.D.N.Y. Mar. 30, 2017). . . . . . . . . . . . . . 7, 21

*Boomershine v. Lifetime Capital, Inc.*,
    No. 22179, 2008 WL 54803 (Ohio Ct. App. Jan. 4, 2008). . . . . . . . . . . . . . . . . . . . . . . . 25

*Browning v. De Ford*,
    1899 OK 12, 60 P. 534, 537, *aff'd*, 178 U.S. 196 (1900). . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cf. Lorenz v. CSX Corp.*,
    736 F. Supp. 650, 660 (W.D. Pa. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Cf. Tribal Consortium, Inc. v. Pierson*,
    No. CIV–06–238–D, 2009 WL 5194374 (W.D. Okla. Dec. 28, 2009). . . . . . . . . . . . . . . 13

*Chang v. JPMorgan Chase Bank, N.A.*,
    845 F.3d 1087, 1097 (11th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Clayton v. Speakman*,
　　1938 OK 93, 76 P.2d 376, 377.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Coll v. First Am. Title Ins. Co.*,
　　642 F.3d 876, 886 (10th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Continental Gin Co. v. De Bord*,
　　1912 OK 291, 123 P. 159.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cooper v. Bondoni*,
　　1992 OK CIV APP 10, 841 P.2d 608, 611–12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Curry v. TD Ameritrade, Inc.*,
　　NO. 1:14-CV-1361-LMM, 2015 WL 11251449 (N.D. Ga. June 30, 2015). . . . . . . . . . . 20

*Dabney v. Chase Nat'l Bank of City of N.Y.*,
　　196 F.2d 668, 673 (2nd Cir. 1952).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*David v. City & Cty. of Denver*,
　　101 F.3d 1344, 1352 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Eastwood v. Nat'l Bank of Commerce*,
　　673 F. Supp. 1068, 1081 (W.D. Okla. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*El Camino Res., Ltd. v. Huntington Nat'l Bank*,
　　722 F. Supp. 2d 875, 902 (W.D. Mich. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
　　837 F. Supp. 2d 162, 192 (S.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13

*Energy Fluids, Inc. v. Cimarex Energy Co.*,
　　Nos. CIV–07–0653–HE, CIV–07–0667–HE, 2008 WL 2404226 (W.D. Okla. Jun. 10, 2008)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Faulk v. Barton*,
　　671 So.2d 726, 728 (Ala. Civ. App. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gagan v. Norton*,
　　35 F.3d 1473, 1474 n.1 (10th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Galena Street Fund, L.P. v. Wells Fargo Bank, N.A.*,
　　No. 12–cv–00587–BNB–KMT, 2013 WL 2114372 (D. Colo. May 15, 2013). . . . . . . . . 9

iii

*Gasperini v. Ctr. for Humanities, Inc.*,
  518 U.S. 415, 427 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hambelton v. Canal Ins. Co.*,
  405 F. App'x 335, 337 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hawk Enters., Inc. v. Cash Am. Int'l, Inc.*,
  2012 OK CIV APP 66, 282 P.3d 786, 790 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*,
  No. 11 Civ. 5832(AJN), 2012 WL 3542196 (S.D.N.Y. Aug. 15, 2012). . . . . . . . . . . . . . . 9

*Hogan v. Provident Life & Accident Ins. Co.*,
  665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Howard Family Charitable Found., Inc. v. Trimble*,
  2011 OK CIV APP 85, 259 P.3d 850, 856–60. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 24

*Howe v. Bank of N.Y. Mellon*,
  783 F. Supp. 2d 466, 486 (S.D.N.Y. 2011) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Huckleberry v. M.C. Dixon Lumber Co.*,
  503 So.2d 1209, 1211 (Ala. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*In re Friedman's Inc.*,
  385 B.R. 381, 431  (Bankr. S.D. Ga.) (disagreeing with cases cited by BOKF), *vacated in part on other grounds*, 394 B.R. 623 (Bankr. S.D. Ga. 2008). . . . . . . . . . . . . . . . . . . . . 16

*In re Nat'l Century Fin. Enters. Inc.*,
  No. 2:03-md-1565, 2006 WL 2849784 (S.D. Ohio Oct. 3, 2006). . . . . . . . . . . . . . . . . . 25

*Insight Tech., Inc. v. FreightCheck, LLC*,
  633 S.E.2d 373, 377–78 (Ga. Ct. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Jojola v. Chavez*,
  55 F.3d 488, 490 (10th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Keel v. Hainline*,
  1958 OK 201, 331 P.2d 397, 400–01.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Kimball v. Better Bus. Bureau of W. Fla.*,
  613 F. App'x 821, 824–25 (11th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

iv

*Krock v. Lipsay*,
    97 F.3d 640, 645 (2d Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lewis v. Marine Midland Grace Trust Co.*,
    63 F.R.D. 39, 45–46 (S.D.N.Y. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*LNC Invs., Inc. v. First Fidelity Bank, NA*,
    935 F. Supp. 1333, 1347 (S.D.N.Y. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 20

*Lopes v. Vieira*,
    543 F. Supp. 2d 1149 (E.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Monitronics Int'l, Inc. v. Veasley*,
    746 S.E.2d 793, 809 (Ga. Ct. App. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

*N.Y. State Med. Care Facilities Fin. Agency v. Bank of Tokyo Trust Co.*,
    621 N.Y.S.2d 466, 471–73 (N.Y. Sup. Ct. 1994). . . . . . . . . . . . . . . . . . . . . . . 10, 11, 21

*Naturalock Solutions, LLC v. Baxter Healthcare Corp.*,
    No. 14-cv-10113, 2016 WL 5792377 (N.D. Ill. Oct. 4, 2016). . . . . . . . . . . . . . . . . 12, 13

*Oliveros v. Mitchell*,
    449 F.3d 1091, 1092 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Peel Payments, LLC v. First Data Corp.*,
    NO. CIV-16-0425-HE, 2016 WL 6407432 (W.D. Okla. Oct. 28, 2016).. . . . . . . 15, 17, 19

*Peterson v. Aaron's, Inc.*,
    108 F. Supp. 3d 1352, 1357–58 (N.D. Ga. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co.*,
    172 F. Supp. 3d 700, 720 (S.D.N.Y. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

*Pine Tel. Co.. v. Alcatel Lucent USA Inc.*,
    617 F. App'x 846, 852–53 (10th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pullar v. Gen. MD Grp.*,
    No. 1:12–CV–4063–TWT, 2013 WL 5284684 (N.D. Ga. Sept. 17, 2013). . . . . . . . . . . 22

*Purcell Co. v. Spriggs Enters., Inc.*,
    431 So.2d 515, 522–23 (Ala. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Riles v. Coston-Riles Lumber Co.*,
    95 So. 43, 46 (Ala. 1922). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Royal Park Invs. SA/NV v. HSBC Bank USA, NA*,
    109 F. Supp. 3d 587, 597 (S.D.N.Y. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 21

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479, 496 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co.*,
    390 So.2d 601, 604 (Ala. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Shawmut Bank, N.A. v. Fourth Street Assocs.*,
    Nos. 104,317, 104,318, 2008 WL 8741770 (Okla. Civ. App. Jan. 18, 2008). . . . . . . . . . 6

*Slater v. A.G. Edwards & Sons, Inc.*,
    719 F.3d 1190, 1196 (10th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sleep Servs. of Am, Inc. v. McPhee*,
    No. 2007-CV-143860 (Ga. Sup. Ct. filed May 21, 2008). . . . . . . . . . . . . . . . . . . . . . . 16

*Stapler v. Parler*,
    103 So. 573, 573 (Ala. 1925). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*State ex rel. Goettsch v. Diacide Distribs.*,
    561 N.W.2d 369 (Iowa 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*State ex rel. Grigsby v. Stokes*,
    1930 OK 124, 286 P. 4, 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stokley v. State*,
    49 So.2d 284, 291 (Ala. 1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Transp. Alliance Bank, Inc. v. Arrow Trucking Co.*,
    No. 10–CV–16–GKF–PJC, 2011 WL 221863 (N.D. Okla. Jan. 21, 2011). . . . . . . . . . . 17

*Traub v. Washington*,
    591 S.E.2d 382, 387 (Ga. Ct. App. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Tripp v. English*,
    1916 OK 725, 158 P. 912, 913–914.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*U.S. Trust Co. of N.Y. v. First Nat'l City Bank*,
 394 N.Y.S.2d 653, 660–61 (N.Y. App. Div. 1977), *aff'd*, 382 N.E.2d 1355 (N.Y. 1978)
 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 20

*Wade v. EMCASCO Ins. Co.*,
 483 F.3d 657, 665 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Walters v. Blankenship*,
 931 So.2d 137, 141–42 (Fla. Dist. Ct. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Walton v. Sec. of Veterans Affairs*,
 No. 1:13–CV–00918–RWS, 2014 WL 5307577 (N.D. Ga. Oct. 15, 2014). . . . . . . . . . 22

*Waugh v. Heidler*,
 1977 OK 78, 564 P.2d 218, 220–221, 221.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wells Fargo Bank, N.A. v. Crowley*,
 No. 1:13-CV-01427-CAP-LTW, 2014 WL 11370437 (N.D. Ga. Feb. 20, 2014). . . . . . . 22

*White v. Shamrock Bldg. Sys., Inc.*,
 669 S.E.2d 168, 172–73 (Ga. Ct. App. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Witcher v. JSD Props., LLC*,
 690 S.E.2d 855, 858 (Ga. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wright v. Apartment Inv. & Mgmt Co.*,
 726 S.E.2d 779, 788 (Ga. Ct. App. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*,
 917 So.2d 368, 372 (Fla. Dist. Ct. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES

GA. CODE ANN. § 10-5-58(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24
GA. CODE ANN. § 10-5-58(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24
GA. CODE ANN. § 51-12-30. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## RULES

FED. R. CIV. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11
FED. R. CIV. P. 23(a) and (b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## OTHER

RESTATEMENT (SECOND) OF TORTS § 876. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **(1) TONY ALMEIDA, (2) LESLIE ALMEIDA,** | ) |
| **(3) CARY CUYLER, (4) SUSAN CUYLER,** | ) |
| **(5) LANA GARDNER, (6) CHARLES** | ) |
| **GARDNER (7) CHRISTIAN LARSEN,** | ) |
| **(8) KAREN B. LARSEN, (9) THOMAS** | ) |
| **RIBAUDO, and (10) CORI RIBAUDO,** | ) |
| **Individually and on Behalf of All Others** | ) |
| **Similarly Situated,** | ) |
| | ) |
| **Plaintiffs,** | ) **Case No. 17-cv-00126-JED-FHM** |
| | )              **(CLASS ACTION)** |
| **v.** | ) |
| | )  **The Honorable John E. Dowdell** |
| **(1) BOKF, NA, d/b/a BANK OF OKLAHOMA,** | ) |
| | ) |
| **Defendant.** | ) |

**PLAINTIFFS' OBJECTION TO DEFENDANT
BOKF, NA'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

Plaintiffs, individually and on behalf of all others similarly situated ("Class"),  submit their

Objection to the Motion to Dismiss [Doc. No. 15] filed by Defendant BOKF, NA, d/b/a Bank of

Oklahoma ("BOKF").  For the reasons set forth below, the Court should deny BOKF's Motion.

## I.  STATEMENT OF THE CASE

This case arises out of BOKF's ongoing breach of its common law duties as Indenture

Trustee to protect the municipal bondholders who purchased eight municipal bond offerings

organized and conducted by Dwayne Edwards ("Edwards") and Todd Barker ("Barker") (i.e., the

"Edwards Offerings").   BOKF's breach of these duties perpetuated a fifteen-year pattern of

misconduct involving senior housing facilities owned by Christopher Brogdon ("Brogdon"), a

recidivist violator of securities rules and regulations who had been twice barred for life from the

securities industry.   The SEC has now sued both Brogdon and Edwards for conducting Ponzi-like

schemes that defrauded investors out of more than $190 million and $62 million, respectively.  *See*

1

First Amended Complaint ("FAC"), ¶¶ 22, 25.  The SEC also filed an Administrative Proceeding against BOKF for aiding and acquiescing in Brogdon's wrongdoing.  *See id.* ¶ 82; *see also* **Exhibit 1** (Administrative Proceeding No. 3-17533).

Pursuant to FED. R. CIV. P. 23(a) and (b)(3), Plaintiffs, residents of Florida who were defrauded by the Edwards Offerings, now bring causes of action, individually and on behalf of the proposed Class, for (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; (3) gross negligence; (4) negligence; (5) breach of fiduciary duty; (6) civil conspiracy; and (7) violations of the Georgia Blue Sky Law.  Plaintiffs seek compensatory damages in excess of $5,000,000, including interest thereon, and reasonable costs and expenses incurred in pursuit of this action, including attorneys' fees.

BOKF acted as Trustee for thirty-nine offerings conducted by Brogdon. FAC, ¶ 5. As Trustee, BOKF had a fiduciary duty to protect the bondholders and to avoid conflicts of interests. The bondholders' confidence in BOKF as an institutional Trustee facilitated the sale of the Bonds.

The BOKF Bond Indentures required the offering for each facility to be separate.  The Indentures provided for working capital funds, debt service reserve funds ("DSRFs"), and funds for facility renovations.  The Indentures prohibited the borrowers from taking management fees unless the facility was generating sufficient cash flow to pay expenses, including payments of interest and principal.  *Id.* ¶ 18.  Despite these obligations, BOKF repeatedly and continuously breached its common law duties to the Brogdon bondholders *for over a decade*.  BOKF routinely and continuously allowed Brogdon to commingle and misuse funds.  BOKF's breaches of fiduciary duty allowed Brogdon to continue issuing offerings to unknowing investors.  *Id.* ¶¶ 6–7.

In 2014, at a time when BOKF's ability to continue concealing Brogdon's misdeeds was becoming increasingly difficult, Edwards approached BOKF and requested that it act as Trustee for

several offerings to acquire the troubled Brogdon facilities.  Notably, Edwards followed Brogdon's scheme almost exactly, including using the same financial advisor, the same legal counsel, the same underwriter, and the same Trustee—BOKF.  Edwards and BOKF continued Brogdon's pattern of misdeeds.  From the first Edwards Offering, BOKF allowed Edwards to misuse proceeds.  Later, BOKF allowed Edwards to use proceeds from subsequent offerings to conceal defaults on previous offerings in the same type of Ponzi-like pattern that it had facilitated with Brogdon.  BOKF concealed Edwards misdeeds from bondholders.  *Id.* ¶¶ 19–20.

BOKF breached its fiduciary duty to the Plaintiffs.  Rather than acting in the best interests of the bondholders, BOKF chose to treat the issuers (i.e., Brogdon and Edwards) as its clients, consistently allowing them to do whatever they wished.  BOKF breached its fiduciary duty (1) by allowing disclosures in the Edwards Offering that it knew were false, (2) by facilitating Edwards' violation of the provisions of the Bond Indentures,[1] and (3) by failing to disclose to bondholders Edwards' misdeeds and defaults under the Bond Indentures.  BOKF facilitated Edwards improper commingling of funds, his misappropriation of funds for his personal benefit, and his use of funds in a manner that resembled a Ponzi-like scheme.  *Id.* ¶¶ 19–20.

BOKF had the ability to prevent 100% of the losses suffered by the Plaintiffs.  Had BOKF honored its duties to the bondholders, neither Brogdon nor Edwards would have been able to continue raising money by issuing more of their Bonds.  Indeed, the Edwards Offerings—which perpetuated the Brogdon scheme—would never have occurred.  It is unknown how much more in bondholder losses BOKF would have facilitated had the SEC not stopped Edwards.  Edwards was working five additional offerings at the time that the SEC shut down his illegitimate operation.

---

[1] Edwards began to commingle funds *at the first opportunity*, only days after the second offering closed.  *Id.* ¶ 19.

BOKF has now moved to dismiss Plaintiffs' First Amended Complaint.  It argues that (1) its relationship with bondholders (like Plaintiffs) is governed exclusively by the terms of the Trust Indenture, and that, as a result, Plaintiffs cannot bring tort actions against BOKF; (2)  Plaintiffs have not alleged a claim for aiding and abetting fraud because (a) Georgia and Alabama do not recognize that cause of action, (b) Plaintiffs have not pled the underlying fraud with the necessary particularity, and (c) in light of the terms of the Trust Indenture, BOKF cannot be held liable for the statements and omissions of Edwards and Barker; (3) Plaintiffs have not alleged a claim for aiding and abetting breach of fiduciary duty because (a) Alabama does not recognize that cause of action, and (b) Plaintiffs have not asserted that BOKF engaged in an improper action, acted purposefully, or advised, counseled, or persuaded the actions of Edwards and Barker; (6) Plaintiffs have not alleged claims for negligence, gross negligence, or breach of fiduciary duty because BOKF has no duty to Plaintiffs other than complying with the terms of the Trust Indenture; (7) Plaintiffs have not stated a claim for civil conspiracy because Alabama and Georgia do not recognize that cause of action; and (8) Plaintiffs have not stated a claim for breach of the Georgia Blue Sky Law because (a) Georgia law does not apply to one of the Edwards Offerings (i.e., the Montgomery Offering), (b) BOKF is not "associated with" the entities that sold the bonds, and (c) BOKF did not materially aid the entities that sold the Bonds.

BOKF's arguments are not supported by the applicable law.  Accordingly, the Court should deny the Motion to Dismiss.

## II.  ARGUMENT

To survive a motion to dismiss, a plaintiff need only "plead facts sufficient 'to state a claim to relief that is plausible on its face.'"  *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  At this stage of litigation,

courts "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City & Cty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n.1 (10th Cir. 1994)). "A complaint may be dismissed pursuant to FED. R. CIV. P. 12(b)(6) only 'if the plaintiff can prove no set of facts to support a claim for relief.'" *Id.* (quoting *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995)).

A.      **In General, Claims I Through VI Adequately Plead Cognizable Tort Claims.**

BOKF argues, as a general matter, that Plaintiffs' tort claims should be dismissed because its duties as Indenture Trustee are exclusively governed by the Trust Indenture.  BOKF's argument misreads the Plaintiffs' causes of action, which are premised in part on BOKF's conduct (1) *prior* to the closing of the Edwards Offerings, when it was *not* contractually the Indenture Trustee for the Edwards Offerings, and (2) *after* the closing, when it was serving as Indenture Trustee.

Plaintiffs' First Amended Complaint alleges that BOKF colluded with Brogdon, the former owner of the subject facilities in Georgia and Alabama, in an effort to conceal the dire financial straits and financial mismanagement of those facilities from the bondholders who invested in the Brogdon Offerings.  Plaintiffs further allege that BOKF agreed to be Indenture Trustee for the Edwards Offerings to cover up its misconduct in relation to the Brogdon Offerings; to protect the other fraudulent players in Brogdon's Ponzi-like scheme; and in expectation of receiving additional trusteeships (which include commissions and other financial contributions) from Lawson and Brogdon.  BOKF's conflict of interest preceded *and* continued throughout its time as Indenture Trustee for the Edwards Offerings.

The First Amended Complaint further alleges that, among other things, BOKF (1) failed to collect management fees for the Edwards Offerings in violation of the respective Indenture and Lease and/or Loan Agreement; and (2) failed to collect financial statements from Edwards for posting on

the Municipal Securities Rulemaking Board's Electronic Municipal Market Access ("EMMA"). *See* **Exhibit 1**, at 4–5. Both of those requirements were non-discretionary, ministerial tasks. Plaintiffs thus allege that BOKF failed to perform the basic non-discretionary, ministerial tasks that it was required to perform *with due care* by virtue of its role as Indenture Trustee.

### 1.        Relevant Body of Law Concerning the Duties of an Indenture Trustee.

Although the substantive laws of Georgia, Alabama—but more than likely—Florida, or Oklahoma will apply to the instant action, it is also useful to consider cases applying New York law.[2]

### 2.        BOKF's Extra-Contractual Duties.

BOKF asserts that its relationship with the bondholders is exclusively governed by the Indenture, but it fails to address or even note the two pre-default, extra-contractual duties also imposed in addition to any duties specified in the Indenture. As the Indenture Trustee for the Brogdon and Edwards Offerings, BOKF had the following pre-default, extra-contractual duties: (1) the duty to avoid conflicts of interest with the bondholders (which, as noted below, is often considered a *fiduciary* duty); and (2) the duty to perform basic non-discretionary, ministerial tasks with due care. *See, e.g.*, *LNC Invs., Inc. v. First Fidelity Bank, NA*, 935 F. Supp. 1333, 1347 (S.D.N.Y. 1996); *AG Capital Funding Partners L.P. v. State St. Bank & Trust Co.*, 896 N.E.2d 61, 66–67 (N.Y. 2008); *see also Beck*, 632 N.Y.S.2d at 526–27; *U.S. Trust Co. of N.Y. v. First Nat'l City Bank*, 394 N.Y.S.2d 653, 660–61 (N.Y. App. Div. 1977), *aff'd*, 382 N.E.2d 1355 (N.Y. 1978). BOKF's duty to avoid conflicts, founded upon its obligation of undivided loyalty to the bondholders,

---

[2]      New York has developed a comprehensive body of law governing banks and other financial organizations and their duties as an indenture trustee, and most states (including those relevant in this case) confronted by similar parties and/or issues rely upon the state and federal district courts in New York as well as the Second Circuit;. *See, e.g.*, *Shawmut Bank, N.A. v. Fourth Street Assocs.*, Nos. 104,317, 104,318, 2008 WL 8741770, at *7 (Okla. Civ. App. Jan. 18, 2008) (discussing the duties of indenture trustees and quoting *Beck v. Mfrs. Hanover Trust Co.*, 632 N.Y.S.2d 520, 527 (N.Y. App. Div. 1995)).

is appropriately considered a *fiduciary* one.[3]  *See Beck*, 632 N.Y.S.2d at 526 (referring to the duty of undivided loyalty as a "fiduciary duty"); *U.S. Trust Co.*, 394 N.Y.S.2d at 660 (same).

Moreover, the duty of loyalty was not "alone among the constellation of fiduciary attributes" required of BOKF as the Indenture Trustee.  *Beck*, 632 N.Y.S.2d at 527.  After an Event of Default (as defined by the Indenture), BOKF's duties expand to resemble those "of an ordinary trustee," requiring it to conduct all of its tasks prudently and in the best interest of the bondholders, "regardless of any limitations or exculpatory provisions contained in the indenture."  *Id.*  Indeed, "fidelity to the terms of [the Indenture] does not immunize [BOKF] against claims that [it] has acted in a manner inconsistent with [its] fiduciary duty of undivided loyalty to trust beneficiaries." *Id.* at 527–28.[4]  Thus, BOKF also owed a post-default fiduciary duty to Plaintiffs.

After an Event of Default, BOKF has to "perform prudently even the more general obligations in the indenture, and [that] applies to any conduct not specifically prohibited by the indenture which would enable the investors to secure repayment of the trust certificates." *LNC Invs.*,

---

[3]  Although some recent cases state that an indenture trustee's pre-default, extra-contractual duties are not fiduciary in nature, they each establish that proposition by misplacing their reliance upon *AG Capital*.  *See BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, NA*, ___ F. Supp. 3d. ___, 2017 WL 1194683, at *12 (S.D.N.Y. Mar. 30, 2017); *Royal Park Invs. SA/NV v. HSBC Bank USA, NA*, 109 F. Supp. 3d 587, 597 (S.D.N.Y. 2015); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 192 (S.D.N.Y. 2011).  *AG Capital* actually held that the *other* extra-contractual duty (i.e., the duty to perform ministerial functions with due care) is not fiduciary in nature.  *AG Capital*, 896 N.E.2d at 67.  *AG Capital* does not even discuss the duty to avoid conflicts except to recognize it as a pre-default, extra-contractual duty. *See id.* at 67–68.  The duty to avoid conflicts (i.e., the duty of loyalty) is always fiduciary in nature, and the majority of courts have recognized that concept:  "[T]he trustee does not owe the broad fiduciary duties of an ordinary trustee prior to an event of default, *except* that the trustee is *at all times* obligated to avoid conflicts of interest with the beneficiaries." *AMBAC Indem. Corp. v. Bankers Trust Co.*, 573 N.Y.S.2d 204, 207–08 (N.Y. Sup. Ct. 1991) (emphasis added).

[4]  *See also LNC Invs.*, 935 F. Supp. at 1347 ("After an event of default, however, the loyalties of an indenture trustee no longer are divided between the issuer and the investors, and as a consequence, [the] law reallocates the indenture trustee's fiduciary duties to reflect that change.").

935 F. Supp. at 1348. Therefore, when courts say that a trustee is not required to act beyond its contractually conferred rights and powers, that only "means that the trustee need not take action specifically prohibited by the contract, and that when the indenture imposes general duties on the trustee, the trustee must take any authorized action necessary to protect the investors." *Id.*

### 3.   BOKF Breached Its Duties, Giving Rise to Tort Liability.

BOKF ignored the above-described duties in its role as Indenture Trustee, and it has continued to turn a blind eye by excluding them from the Motion to Dismiss. BOKF failed to note these long-established duties and made no attempt to address the host of supporting case law—which also includes many of the cases referenced in the Motion to Dismiss.

#### a.   BOKF's Breaches of Its Duties.

Plaintiffs' First Amended Complaint alleges conflicts of interest that began *pre-default* and continued *post-default*, and it asserts several breaches of the duty to perform non-discretionary, ministerial tasks with due care. As to the conflicts of interest, Plaintiffs' allege that BOKF aided the unlawful and fraudulent conduct of Edwards, Barker, and Lawson in hopes that the proceeds from the Edwards Offerings would pay off Brogdon's outstanding bonds—forever resolving and concealing the misdeeds of Brogdon and the collusion of BOKF. Plaintiffs further allege that BOKF agreed to be Indenture Trustee for the Edwards Offerings (1) to protect the other fraudulent players in Brogdon's Ponzi-like scheme and (2) in expectation of receiving additional trusteeships (which include commissions and other financial contributions) from Lawson and Brogdon. These allegations "are the classic hallmarks of a conflict of interest." *Ellington*, 837 F. Supp. 2d at 187.

BOKF placed its own interests—and those of Brogdon and Lawson— over those of Plaintiffs and the proposed Class. Its involvement with Brogdon and Lawson had thus created a classic, unwaivable conflict of interest with those who would be investing in the Edwards Offerings.

As to the duty to perform non-discretionary, ministerial tasks with due care, Plaintiffs' First Amended Complaint alleges that BOKF was responsible for, among other things, (1) obtaining and reviewing the borrower's financial information; (2) ensuring compliance with the terms of the offering documents, which includes transferring funds in accordance with those documents; (3) notifying the investors of any noncompliance or violations of the terms of the offering documents; (4) overseeing and safeguarding investor proceeds and transactions involving the trust accounts; (5) declaring a default in appropriate circumstances; (6) notifying bondholders of the default; and (7) taking appropriate and prudent action to protect the interests of the bondholders in the event of a default.  BOKF violated these duties and caused the bondholders significant losses.

**b.     BOKF Is Subject to Tort Liability**.

BOKF plainly breached the duties it had as Indenture Trustee, exposing itself to tort liability and authorizing the tort claims in Plaintiffs' First Amended Complaint.  *See LNC Invs.*, 935 F. Supp. at 1347; *AG Capital*, 896 N.E.2d at 67.  For example, in *AG Capital*, the court reinstated a negligence claim against an indenture trustee based upon allegations that the indenture trustee failed to perform its non-discretionary, ministerial tasks with due care.  *See AG Capital*, 896 N.E.2d at 62, 68.  Numerous courts adhere to that position, permitting claims founded upon violations of the above-described duties to proceed (e.g., negligence-based claims and breach of fiduciary duty).[5]

---

[5]    *See, e.g.*, *Dabney v. Chase Nat'l Bank of City of N.Y.*, 196 F.2d 668, 673 (2nd Cir. 1952) (finding indenture trustee liable for pre-default breach of duty to avoid conflicts "because the trustee put itself in a position of advantage vis-a-vis its beneficiaries"); *Galena Street Fund, L.P. v. Wells Fargo Bank, N.A.*, No. 12–cv–00587–BNB–KMT, 2013 WL 2114372, at *13 (D. Colo. May 15, 2013) (denying motion to dismiss as to breach of fiduciary duty claim where plaintiff "sufficiently alleged that [bank] in its capacity as trustee breached its extra-contractual duty to avoid conflicts of interest"); *Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, No. 11 Civ. 5832(AJN), 2012 WL 3542196, at *13 (S.D.N.Y. Aug. 15, 2012) (denying motion to dismiss as to the portion of the breach of fiduciary claim that alleged a pre-default breach of the fiduciary duty to avoid conflicts of interest); *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 486 (S.D.N.Y. 2011) (denying summary judgment as to breach of fiduciary duty claim against indenture trustee where

BOKF's Motion to Dismiss should be denied because Plaintiffs' tort claims, including the aiding and abetting and conspiracy claims, are all premised on BOKF's misconduct and conflict of interest that are *not* limited by the Trust Indenture. *See, e.g.*, *Lewis v. Marine Midland Grace Trust Co.*, 63 F.R.D. 39, 45–46 (S.D.N.Y. 1973) (denying motions to dismiss and indicating that if the elements of aiding-and-abetting liability are established the indenture trustee can be liable).

      c.      **Plaintiffs' Tort Claims Are Not Based on Breach of Contract and Are Not Precluded by Any Exculpatory Clause.**

Plaintiffs' tort claims are all based upon the *extra-contractual* duties that the law imposes upon BOKF as Indenture Trustee.  Contrary to BOKF's argument, Plaintiffs do not assert any contractual-based claims or base their tort claims on any specific contractual duties.  All of the instant claims stem from violations of the independent, extra-contractual duties required of BOKF.[6]

Moreover, since Plaintiffs' allegations invoke *only* extra-contractual duties arising beyond the four corners of the Indenture, the exculpatory provision does not preclude Plaintiffs' claims against BOKF.  Courts created these extra-contractual duties specifically to prevent indenture trustees from abdicating their duty to operate in the best interests of the bondholders. *Beck*, 632 N.Y.S.2d at 527; *see also Royal Park Invs.*, 109 F. Supp. 3d at 609 n.127.  Accordingly, courts do

---

plaintiffs alleged that it "breached its pre-default duty to avoid conflicts of interest by advancing its own interests at the expense of the note holders"); *N.Y. State Med. Care Facilities Fin. Agency v. Bank of Tokyo Trust Co.*, 621 N.Y.S.2d 466, 471–73 (N.Y. Sup. Ct. 1994) (denying indenture trustee's motion to dismiss and for summary judgment as to claims of negligence and breach of fiduciary duty occurring pre-default and granting summary judgment to plaintiff on both claims); *AMBAC Indem.*, 573 N.Y.S.2d at 208 (finding that allegations of a pre-default conflict of interest properly support "claims for breach of fiduciary duty by an indenture trustee even in advance of default").

    [6]  *See Royal Park Invs.*, 109 F. Supp. 3d at 609 n.127 ("It is irrelevant that plaintiffs claim that while violating these [extra-contractual] duties, [the trustee] was also breaching the contracts. The fiduciary duties were independently created . . . for fear that 'broad exculpatory provisions' would excuse indenture trustees from operating in the best interest of the certificateholders." (quoting *Beck*, 632 N.Y.S.2d at 527)).

not apply exculpatory provisions to claims based upon breach of an extra-contractual duty. *See, e.g.*, *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co.*, 172 F. Supp. 3d 700, 720 (S.D.N.Y. 2016) ("On a motion to dismiss, the negligence claim cannot be dismissed based on an argument that the [Indentures] bar a negligence action related to [the trustee's] alleged conflicts of interest or duty of care with respect to ministerial acts in administering the trust.").[7]  For these reasons, Plaintiffs' First Amended Complaint adequately pleads cognizable tort claims against BOKF.  The Court should deny the Motion to Dismiss as to Claims I through VI.

**B.      Each of Plaintiffs' Causes of Action Properly State A Claim for Relief.**

BOKF also asserts that each of Plaintiffs' causes of action, considered individually, should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).  BOKF's arguments are misguided and, in some cases, inapplicable.  Plaintiffs have properly stated causes of action for aiding and abetting fraud; aiding and abetting breach of fiduciary duty; gross negligence; negligence; breach of fiduciary duty; civil conspiracy; and violations of the Georgia Blue Sky Law.

**1.      The Choice of Law Provisions Do Not Apply to Plaintiffs' Tort Claims.**

BOKF argues that dismissal of at least three claims (aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and civil conspiracy) is warranted because such claims are not recognized in Georgia or Alabama.  BOKF asserts that the laws of Geogia and Alabama govern this

---

[7]    *See also Monitronics Int'l, Inc. v. Veasley*, 746 S.E.2d 793, 809 (Ga. Ct. App. 2013) (McMillian, J., concurring) (finding that "the limitation-of-liability clause in this case is not sufficiently specific or explicit to preclude a negligence claim against [company] based on breach of an extra-contractual duty").  And even if the exculpatory provisions were applicable, they are not specific or clear enough to bar claims based upon breach of an extra-contractual duty. *See Phoenix Light SF Ltd.*, 172 F. Supp. 3d at 720; *see also N.Y. State Med.*, 621 N.Y.S.2d at 472 ("The court finds that the obligation to fulfill these tasks is inherent in the very nature of an indenture trustee's service and, absent a clear and unequivocal statement in the indenture (or other pertinent document) relieving the trustee of this duty, or lowering the basic standard of care, a trustee will be liable for negligence . . . .").

case as a result of the choice of law provision in each Indenture—a proposition that BOKF cursorily addresses via footnote in its Motion to Dismiss.

BOKF misreads the choice of law provisions in the Indentures. Each of these provisions is entitled "Laws Governing *Indenture*" and states that "[t]he effect and meaning *hereof* and the rights of all parties *hereunder* shall be governed by, and construed according to, the laws of the State of [Georgia or Alabama]." *See* Mot. to Dismiss, Exs. 1–6, § 1411 (emphasis added). Plaintiffs have not asserted any contract-based causes of action or any causes of action related to the meaning of, or rights under, the Trust Indentures. Therefore, BOKF is misguided in its efforts to invoke the laws of Georgia and Alabama.

Although Oklahoma courts will generally enforce choice of law provisions, "[e]nforceability is not the same as scope." *See Naturalock Solutions, LLC v. Baxter Healthcare Corp.*, No. 14-cv-10113, 2016 WL 5792377, at *4 (N.D. Ill. Oct. 4, 2016) (applying Oklahoma law). That a contract's choice of a particular state's law "to govern the *contract* between the parties is enforceable under Oklahoma choice-of-law rules does not necessarily mean that the choice-of-law provision is broad enough to cover [plaintiff's] *tort* claims as well." *Id.*[8] Courts do not apply contractual choice of law provisions to tort claims unless it is clear that the parties intended such application. *See, e.g., Krock*, 97 F.3d at 645 ("[I]n order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be [broad enough] to encompass the entire relationship between the contracting parties."). The same is true in Oklahoma.

Oklahoma courts have addressed this issue and determined that, unless specifically stated otherwise, contractual choice of law provisions are not applicable to tort claims that do not arise out

---

[8] *See also Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) ("[A] choice-of-law provision indicating that the *contract* will be governed by a certain body of law does not dispositively determine that law which will govern a claim of [*tort*] arising incident to the contract.").

of the contract. *See, e.g.*, *Hawk Enters., Inc. v. Cash Am. Int'l, Inc.*, 2012 OK CIV APP 66, ¶10, 282 P.3d 786, 790 (finding that choice of law provision was not broad enough to include plaintiff's claim for tortious interference).[9]

Here, the choice of law provisions specifically relegate their application to "the effect and meaning *hereof*" and to "the rights of all parties *hereunder*." *See* Mot. to Dismiss, Exs. 1–6, § 1411 (emphasis added). The limiting and narrow nature of that language is further demonstrated by the title of the choice of law section, "Law Governing *Indenture*." *See id.* And as yet another indicator of the provisions' restricted scope, the Indentures mandate that the terms "hereof" and "hereunder" be read as referring specifically "to [the respective] *Indenture*." *See id.*, Exs. 1–6, § 102 (emphasis added). The parties could not have intended such narrow choice of law provisions to govern every possible dispute that could arise between them—and certainly not to claims existing independent of the Indentures. *See, e.g.*, *Pine Tel. Co.*, 617 F. App'x at 852–53; *Hawk Enters.*, 2012 OK CIV APP 66, ¶10, 282 P.3d at 790.

Importantly, although choice of law provisions may be applied to tort claims that arise out of a contract, Plaintiffs' tort claims are not premised on the Indentures. *Cf. Tribal Consortium, Inc. v. Pierson*, No. CIV–06–238–D, 2009 WL 5194374, at *6 (W.D. Okla. Dec. 28, 2009). Plaintiffs' tort claims are based upon the extra-contractual, common law duties created and existing *independent* of the Indentures, and the choice of law provisions therein are "silent regarding [such] common law tort and fiduciary duty claims at issue here." *See Ellington*, 837 F. Supp. 2d at 180

---

[9] *See also Pine Tel. Co.. v. Alcatel Lucent USA Inc.*, 617 F. App'x 846, 852–53 (10th Cir. 2015) (finding that choice of law provision governed the contract and warranty claims but because fraud claims did not arise out of the agreement, the forum state's (Oklahoma's) choice-of-law principles determined which law governed those claims); *Naturalock Solutions*, 2016 WL 5792377, at *4 (choosing not to apply the contractual choice of law provision to the alleged tort claims and stating that such a result appears "to be the correct conclusion under Oklahoma law").

(citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)) (noting that choice of law provisions do not apply to alleged breaches of an indenture trustee's extra-contractual duties). Therefore, the narrow choice of law provisions were not intended to, and simply cannot, apply to the tort claims in Plaintiffs' First Amended Complaint.

When, as here, the choice of law provisions are inapplicable to the alleged tort claims, "the forum state's choice of law rules govern." *Hambelton v. Canal Ins. Co.*, 405 F. App'x 335, 337 (10th Cir. 2010). In tort cases like this one, Oklahoma applies the law of the state having the most significant relationship to the occurrence, parties, and claims. *See id.* Plaintiffs submit that the state having the most significant relationship in this case is either Florida (Plaintiffs' domicile) or Oklahoma (BOKF's domicile and where it conducted most, if not all, of its misconduct). Additional information is needed to fully resolve this issue, but in any event, BOKF failed to argue (much less definitively establish) that Plaintiffs' First Amended Complaint does not allege causes of action under the law of Florida or Oklahoma. Dismissal is unwarranted for that reason as well.

However, regardless of the law applied—whether it is Georgia, Alabama, Oklahoma, or Florida—Plaintiffs have properly stated causes of action for aiding and abetting fraud; aiding and abetting breach of fiduciary duty; gross negligence; negligence; breach of fiduciary duty; civil conspiracy; and violations of the Georgia Blue Sky Law.

## 2. Plaintiffs' First Amended Complaint Properly States a Claim for Aiding and Abetting Fraud.

BOKF argues that Plaintiffs have not alleged a claim for aiding and abetting fraud because (a) Georgia and Alabama do not recognize that cause of action; (b) Plaintiffs have not pled the underlying fraud with the necessary particularity; and (c) in light of the terms of the Trust Indenture, BOKF cannot be held liable for the statements and omissions of Edwards and Barker. All three of these propositions fail for the following reasons.

14

BOKF's first proposition incorrectly assumes that when a state's highest court has not specifically recognized a certain cause of action, any claim asserted based upon that theory of liability must be dismissed.  That is not the law.

When a state's highest court has not specifically recognized a cause of action, the federal court "must determine what decision that state court would make if faced with the same facts and issues." *Oliveros v. Mitchell*, 449 F.3d 1091, 1092 (10th Cir. 2006); *see also Peel Payments, LLC v. First Data Corp.*, NO. CIV-16-0425-HE, 2016 WL 6407432, at *2 (W.D. Okla. Oct. 28, 2016).  In doing so, the federal court "must attempt to predict what the state's highest court would do" by seeking "guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of the law." *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007).  Therefore, the only question is *would* the state recognize a certain cause of action.  Here,   Florida, Georgia, and Alabama have either specifically recognized or permitted a cause of action for aiding and abetting fraud.

With regard to Florida, "[a]lthough no Florida court has explicitly recognized a cause of action for aiding and abetting fraud, Florida courts have assumed that the cause of action exists." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097 (11th Cir. 2017); *see also ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So.2d 368, 372 (Fla. Dist. Ct. App. 2005) ("A review of the case law suggests that, despite a dearth of authority, aiding and abetting a fraud may well be a valid cause of action in Florida.").

Georgia law states that "[i]n *all* cases, a person who maliciously procures an injury to be done to another, whether an actionable wrong or a breach of contract, is a joint wrongdoer and may be

subject to an action either alone or jointly with the person who actually committed the injury." *Insight Tech., Inc. v. FreightCheck, LLC*, 633 S.E.2d 373, 377–78 (Ga. Ct. App. 2006) (quoting GA. CODE ANN. § 51-12-30) (recognizing a claim for aiding and abetting breach of fiduciary duty). "Fraud is certainly an 'actionable wrong' within the language of O.C.G.A. § 51-12-30, and therefore the Court [should] apply the tort of aiding and abetting fraud here."[10]

With regard to Alabama, BOKF takes the position that because aiding and abetting fraud was recognized in a different context than this case (i.e., corporate promoter), no such cause of action exists in Alabama. That is not the law. Again, the question here is *would* aiding and abetting fraud be recognized by the state's highest court. The Alabama Supreme Court has affirmatively answered that question for this Court. *See Riles v. Coston-Riles Lumber Co.*, 95 So. 43, 46 (Ala. 1922) ("[T]hird persons who participate with promoters in a fraud . . . will be jointly and severally liable with the promoters to such subscribers for the fraud as in other cases of joint tort-feasors.").[11]

---

[10]  *See In re Friedman's Inc.*, 385 B.R. 381, 431  (Bankr. S.D. Ga.) (disagreeing with cases cited by BOKF), *vacated in part on other grounds*, 394 B.R. 623 (Bankr. S.D. Ga. 2008); *see also Peterson v. Aaron's, Inc.*, 108 F. Supp. 3d 1352, 1357–58 (N.D. Ga. 2015); *Wright v. Apartment Inv. & Mgmt Co.*, 726 S.E.2d 779, 788 (Ga. Ct. App. 2012) ("The evidence in this case was sufficient to support a finding that [the defendants] acted in concert with and *aided and abetted [another's] fraud* and breach of his fiduciary duty." (emphasis added)).  Importantly, both state and federal courts in Georgia permitted the imposition of liability for aiding and abetting tortuous conduct (including aiding and abetting fraud) prior to *Wright*.  *See In re Friedman's Inc.*, 385 B.R. at 431; *Sleep Servs. of Am, Inc. v. McPhee*, No. 2007-CV-143860, at 5 (Ga. Sup. Ct. filed May 21, 2008) (attached as **Exhibit 2**) ("In light of the developing body of Georgia law on the claim of aiding and abetting fraud, the Court hereby DENIES [defendant's] Motion to Dismiss.").

[11]  *See also Huckleberry v. M.C. Dixon Lumber Co.*, 503 So.2d 1209, 1211 (Ala. 1987) ("This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the other in the perpetration or commission of the offense, is a guilty participant, and in the eye of the law is equally guilty with the one who does the act." (quoting *Stokley v. State*, 49 So.2d 284, 291 (Ala. 1950)); *Stapler v. Parler*, 103 So. 573, 573 (Ala. 1925) ("The general rule is that all parties participating in a wrongful act, directly or indirectly, whether as principals or as agents, or both, are jointly and severally liable in damages for the wrong done, where injury results."); *Faulk v. Barton*, 671 So.2d 726, 728 (Ala. Civ. App. 1995) (noting that a party who joins in the fraudulent transaction because a party to the fraud).

Oklahoma has also indicated that it would permit a claim for aiding and abetting fraud. Although a few cases have questioned whether that claim exists in Oklahoma, they do not examine whether the claim *would* be recognized by the Oklahoma Supreme Court.  *See Transp. Alliance Bank, Inc. v. Arrow Trucking Co.*, No. 10–CV–16–GKF–PJC, 2011 WL 221863, at *5 (N.D. Okla. Jan. 21, 2011); *Eastwood v. Nat'l Bank of Commerce*, 673 F. Supp. 1068, 1081 (W.D. Okla. 1987).

Oklahoma's highest court has repeatedly referenced liability for aiding and abetting in another's fraud.[12]  Oklahoma courts have also recognized claims for aiding and abetting in other tortious circumstances.  *See, e.g.*, *Keel v. Hainline*, 1958 OK 201, ¶¶ 6–10, 331 P.2d 397, 400–01 (assault and battery); *Continental Gin Co. v. De Bord*, 1912 OK 291, 123 P. 159 (conversion); *Cooper v. Bondoni*, 1992 OK CIV APP 10, ¶¶ 13–23, 841 P.2d 608, 611–12 (negligence); *see also Peel Payments*, 2016 WL 6407432, at *2 (breach of fiduciary duty).

Importantly, in *Cooper v. Bondoni*, 1992 OK CIV APP 10, ¶¶ 13–23, 841 P.2d at 611–12, Oklahoma adopted the RESTATEMENT (SECOND) OF TORTS § 876.  "Federal courts from around the country have taken a state court's adoption of Section 876 of the RESTATEMENT (SECOND) OF TORTS to mean that a state supreme court would recognize common law aiding and abetting fraud." *Adelphia Recovery Trust v. Bank of Am.*, N.A., 624 F. Supp. 2d 292, 310 (S.D.N.Y. 2009).[13]

---

[12]    *See, e.g.*, *Waugh v. Heidler*, 1977 OK 78, ¶ 4, ¶ 4 nn.2–3, 564 P.2d 218, 220–221, 221 nn.2–3; *Clayton v. Speakman*, 1938 OK 93, ¶ 2, 76 P.2d 376, 377; *State ex rel. Grigsby v. Stokes*, 1930 OK 124, ¶ 6, 286 P. 4, 5; *Tripp v. English*, 1916 OK 725, ¶¶ 1–9, 158 P. 912, 913–914; *Browning v. De Ford*, 1899 OK 12, ¶ 11, 60 P. 534, 537, *aff'd*, 178 U.S. 196 (1900); *see also Energy Fluids, Inc. v. Cimarex Energy Co.*, Nos. CIV–07–0653–HE, CIV–07–0667–HE, 2008 WL 2404226, at *3 (W.D. Okla. Jun. 10, 2008) (discussing aiding and abetting fraud); *Howard Family Charitable Found., Inc. v. Trimble*, 2011 OK CIV APP 85, ¶¶ 20–33, 259 P.3d 850, 856–60 (discussing aiding and abetting fraud).

[13]    *See also El Camino Res., Ltd. v. Huntington Nat'l Bank*, 722 F. Supp. 2d 875, 902 (W.D. Mich. 2010) ("[A] state supreme court asked to adopt an aiding-and-abetting theory is not likely to dismiss precedents from New York. The New York state courts recognize secondary liability on an aiding-and-abetting theory, and . . . cite section 876(b) of the Restatement for the elements.").

Accordingly, Plaintiffs have properly stated a cause of action for aiding and abetting fraud under the laws of Georgia, Alabama, Florida, and Oklahoma.  Further, Plaintiffs have properly pled the underlying fraud with the necessary particularity.  Plaintiffs included very specific allegations of the fraudulent misrepresentations and omissions committed by both Edwards and Barker.  *See* FAC, ¶¶ 18–19.  In fact, Plaintiffs devoted an entire section of their First Amended Complaint to detailing "Edwards' Fraudulent Activity." *See id.* ¶¶ 58–69.  Plaintiffs also clearly explained the role BOKF played in assisting Edwards and Barker.  *See id.* ¶¶ 70–84.

Additionally,  Plaintiffs' allegations are sufficient to establish that BOKF *willingly and knowingly* assisted Edwards and Barker—and that it had ample motivation to do so.  BOKF intentionally, willingly, and knowingly aided and abetted the fraudulent activity of Edwards and Barker in an affirmative effort to cover up its misconduct in relation to the Brogdon Offerings; to protect the other fraudulent players in Brogdon's Ponzi-like scheme; and in expectation of receiving additional trusteeships from Lawson and Brogdon.

Finally, Plaintiffs have demonstrated that BOKF had duties and responsibilities to the Plaintiffs and the proposed Class arising and existing independently of the Trust Indenture.  BOKF violated those duties and responsibilities, intentionally associated itself (for fraudulent purposes) with Brogdon, Edwards, Barker, Lawson, and Cantone, and willingly and knowingly assisted the fraudulent activity of all involved parties—particularly Edwards and Barker.  For the foregoing reasons, Plaintiffs have properly stated a claim for aiding and abetting fraud against BOKF.

3.   **Plaintiffs Have Properly Stated a Claim for Aiding and Abetting Breach of Fiduciary Duty.**

BOKF asserts that Plaintiffs have not alleged a claim for aiding and abetting breach of fiduciary duty because (a) Alabama does not recognize that cause of action; and (b) Plaintiffs have

not asserted that BOKF engaged in improper action, acted purposefully, or advised, counseled, or persuaded the actions of Edwards and Barker.  These propositions fail for the following reasons.

Again, as to the first argument, the question is *would* aiding and abetting breach of fiduciary duty be recognized by the state's highest court.  As noted above, the Alabama Supreme Court has recognized the viability of claims for civil aiding and abetting under the laws of Alabama.  *See, e.g.*, *Huckleberry*, 503 So.2d at 1211; *Stapler*, 103 So. at 573; *Riles*, 95 So. at 46.  This is also true in the context of aiding and abetting breach of fiduciary duty.[14]  Aiding and abetting breach of fiduciary duty is thus permitted or adopted in Alabama, *see id.*, as well as Oklahoma, Florida, and Georgia.[15]

BOKF further argues that Plaintiffs have not alleged that BOKF engaged in improper action, acted purposefully, or advised, counseled, or persuaded the actions of Edwards and Barker sufficient to establish an aiding and abetting breach of fiduciary duty claim under the laws of Georgia.  However, to the extent Georgia law applies, Plaintiffs have properly stated a claim for aiding and abetting breach of fiduciary duty against BOKF.  Plaintiffs allege that BOKF took improper action and/or engaged in wrongful conduct with regard to Edwards, Barker, and the Edwards Bonds.  BOKF intentionally, willingly, and knowingly failed to mention the prior DSRF deficiencies of Brogdon's facilities to Edwards and Barker.  *See* FAC, ¶ 73.

BOKF's improper action and/or wrongful conduct was done purposefully and with malice and the intent to injure. In stark contrast to the circumstances in the cases cited by BOKF, the

---

[14]   *See Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co.*, 390 So.2d 601, 604 (Ala. 1980) (noting that a claim of aiding and abetting breach of fiduciary duty was tried to a jury and thereby recognizing its existence as a viable tort in Alabama).

[15]   *See Peel Payments*, 2016 WL 6407432, at *2; *Hogan v. Provident Life & Accident Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009) ("A cause of action for aiding and abetting a breach of fiduciary duty exists under Florida law."); *Insight*, 633 S.E.2d at 379; *see also Keel*, 1958 OK 201, ¶¶ 6–10, 331 P.2d at 400–01; *Cooper*, 1992 OK CIV APP 10, ¶¶ 13–23, 841 P.2d at 611–12.

circumstances here involve much more than mere "assistance." *See Curry v. TD Ameritrade, Inc.*, NO. 1:14-CV-1361-LMM, 2015 WL 11251449, at *14 (N.D. Ga. June 30, 2015).  Plaintiffs have specifically alleged that BOKF knew about Brogdon's wrongful conduct and acted purposefully in taking improper action with regard to Edwards, Barker, and the Edwards Bonds and did so in an affirmative effort to cover up its misconduct in relation to the Brogdon Offerings; to protect the other fraudulent players in Brogdon's Ponzi-like scheme; and in expectation of receiving additional trusteeships from Lawson and Brogdon.  Such conduct more than satisfies the level of conduct required by *White v. Shamrock Bldg. Sys., Inc.*, 669 S.E.2d 168, 172–73 (Ga. Ct. App. 2008) and *Witcher v. JSD Props., LLC*, 690 S.E.2d 855, 858 (Ga. 2010)—as cited by BOKF.

The First Amended Complaint alleges that BOKF's conflict of interest motivated it to take improper action and/or engage in wrongful conduct with regard to Edwards, Barker, and the Edwards Bonds.  Plaintiffs further allege that BOKF's improper actions and/or wrongful conduct procured a breach of fiduciary duty by Edwards and Barker and proximately caused damage to the Plaintiffs and the proposed Class.  *See* FAC, ¶¶ 20, 104, 106.  For the foregoing reasons, Plaintiffs properly state a claim for aiding and abetting breach of fiduciary duty against BOKF.

### 4.    Plaintiffs Have Properly Stated Claims for Gross Negligence, Negligence, and Breach of Fiduciary Duty.

BOKF argues that Plaintiffs have not alleged claims for negligence, gross negligence, or breach of fiduciary duty because BOKF has no duty to Plaintiffs other than complying with the terms of the Trust Indenture.  As noted above, this assertion is contrary to the long-established laws governing indenture trustees.[16]  Plaintiffs assert that their breach of fiduciary duty claim is relevant to violations of *both* the pre-default conflict of interest (which continued at all times, including post-

---

[16]  *See, e.g.*, *LNC Invs.*, 935 F. Supp. at 1347; *AG Capital*, 896 N.E.2d at 66–67; *Beck*, 632 N.Y.S.2d at 526–27; *U.S. Trust Co.*, 394 N.Y.S.2d at 660–61.

20

default) and the post-default fiduciary duties imposed on Defendant BOKF.  But even if the Court takes the minority view that the pre-default duty to avoid conflicts is not fiduciary in nature, Plaintiffs' breach of fiduciary duty claim would still survive dismissal based on their allegations that Defendant BOKF violated the post-default (i.e., post-Event of Default) fiduciary duties it owed to them and the proposed Class.[17]  BOKF's pre-default conflict of interest would nevertheless continue to underpin the negligence and gross negligence claims.[18]  Plaintiffs' negligence and gross negligence claims are further supported by BOKF's multiple and repeated violations of its duty to perform all non-discretionary, ministerial tasks with due care while serving as Indenture Trustee.[19]

As noted, Plaintiffs' claims invoke duties arising beyond the Indenture; thus, the exculpatory provisions do not preclude Plaintiffs' claims against BOKF.[20]  Accordingly, Plaintiffs have properly stated claims for negligence, gross negligence, and breach of fiduciary duty against BOKF.

### 5.    Plaintiffs Have Properly Stated a Claim for Civil Conspiracy.

BOKF argues that Plaintiffs have not stated a claim for civil conspiracy because that cause of action is not recognized in Georgia or Alabama.  BOKF simply misunderstands the law.  Although

---

[17]    *See, e.g.*, *BlackRock*, 2017 WL 1194683, at *12–13 (denying motion to dismiss as to plaintiffs' "post-EOD, breach-of-fiduciary-duty claim"); *Royal Park Invs.*, 109 F. Supp. 3d at 608–609 ("To the extent that plaintiffs plead a post-Event of Default breach of [the trustee's] duty of loyalty, [the trustee's] motion to dismiss these claims is denied.").

[18]    Courts that do not recognize the pre-default duty to avoid conflicts as fiduciary still permit those allegations to support negligence-based claims.  *See, e.g.*, *Phoenix Light SF Ltd.*, 172 F. Supp. 3d at 719.

[19]    *See, e.g.*, *See AG Capital*, 896 N.E.2d at 62, 68 (reinstating a negligence claim against an indenture trustee based upon allegations that the indenture trustee failed to perform its non-discretionary, ministerial tasks with due care); *N.Y. State Med.*, 621 N.Y.S.2d at 471–73 (denying indenture trustee's motion to dismiss and for summary judgment as to claims of negligence and granting summary judgment to plaintiff).

[20]    *See, e.g., Phoenix Light SF Ltd.*, 172 F. Supp. 3d at 720; *Royal Park Invs.*, 109 F. Supp. 3d at 609 n.127; *Beck*, 632 N.Y.S.2d at 527; *see also Veasley*, 746 S.E.2d at 809 (McMillian, J., concurring).

21

Georgia, Alabama, Florida, and Oklahoma hold that the mere existence of a conspiracy cannot form the basis of a cause of action, "it is a 'theory for imposing liability on one who did not actually commit the underlying tort;' or, to put it another way, it is simply 'an avenue by which [a party] may be liable for the torts of their alleged co-conspirators.'"[21] Florida even recognizes civil conspiracy as an independent tort "where the plaintiff can show some 'peculiar power of coercion' possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess." *Walters*, 931 So.2d at 141–42.

"To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Walton v. Sec. of Veterans Affairs*, No. 1:13–CV–00918–RWS, 2014 WL 5307577, at *4 (N.D. Ga. Oct. 15, 2014).[22]

Here, Plaintiffs have alleged a conspiracy to perpetrate fraud and breach of fiduciary duties against BOKF. *See* FAC, ¶¶118–23. Plaintiffs have also, as noted above, included allegations sufficient to support the underlying torts of fraud and breach of fiduciary duty. Accordingly, Plaintiffs have properly pled a civil conspiracy claim, and the merits of the conspiracy and any resulting damages are "best suited for jury resolution." *See Traub v. Washington*, 591 S.E.2d 382, 387 (Ga. Ct. App. 2003).[23]

---

[21]   *Wells Fargo Bank, N.A. v. Crowley*, No. 1:13-CV-01427-CAP-LTW, 2014 WL 11370437, *8 (N.D. Ga. Feb. 20, 2014) (quoting *Pullar v. Gen. MD Grp.*, No. 1:12–CV–4063–TWT, 2013 WL 5284684, *5 (N.D. Ga. Sept. 17, 2013)); *see also Purcell Co. v. Spriggs Enters., Inc.*, 431 So.2d 515, 522–23 (Ala. 1983); *Walters v. Blankenship*, 931 So.2d 137, 141–42 (Fla. Dist. Ct. App. 2006); *Barsh v. Mullins*, 1959 OK 2, ¶¶ 5–7, 338 P.2d 845, 847.

[22]   *See also Purcell Co.*, 431 So.2d at 522–23; *Walters*, 931 So.2d 137, 141–42; *Barsh*, 1959 OK 2, ¶¶ 5–7, 338 P.2d at 847. "When alleged, a conspiracy may be pleaded in general terms." *Walton*, 2014 WL 5307577, at *4.

[23]   *See also Kimball v. Better Bus. Bureau of W. Fla.*, 613 F. App'x 821, 824–25 (11th Cir. 2015).

**6. Plaintiffs Have Properly Stated a Claim for Violations of the Georgia Blue Sky Law.**

BOKF alleges that Plaintiffs have not stated a claim for violation of the Georgia Blue Sky Law because (a) Georgia law does not apply to one of the Edwards Offerings (i.e., the Montgomery Offering); (b) BOKF is not "associated with" the entities that sold the bonds; and (c) BOKF did not materially aid the entities that sold the Bonds. For the following reasons, the Court should reject these arguments from BOKF.

With regard to the first argument, the Georgia Blue Sky Law applies where a person makes a sale or offer to sell in Georgia or the offer to purchase or the purchase is made and accepted in Georgia. GA. CODE ANN. § 10-5-58(b).[24] Plaintiffs brought this lawsuit against BOKF in their individual capacity and on behalf of the proposed Class. Plaintiffs allege that investors from across the country, including Georgia, invested in each of the Edwards Offerings, including the Montgomery Offering. Discovery in this case is ongoing, but all that is needed for the Georgia Blue Sky Law to apply to the Montgomery Offering is one investor from Georgia who invested in that Edwards Offering. Thus, Plaintiffs, individually and on behalf of the proposed Class, allege facts sufficient to survive a Motion to Dismiss as to the Montgomery Offering.

BOKF further argues that Plaintiffs did not allege that BOKF was associated with the entities who sold the bonds, Lawson and Cantone. To the contrary, Plaintiffs' First Amended Complaint sets forth ample facts demonstrating association and collusion between BOKF, Lawson, and Cantone. In fact, Plaintiffs allege that BOKF and Lawson (the underwriter on all six of the Edwards Offerings in which BOKF served as Indenture Trustee) worked together to keep their fraudulent scheme afloat

---

[24] "[A]n offer to sell or to purchase a security is made in [Georgia], whether or not either party is then present in [Georgia], if the offer: (1) Originates from within [Georgia]; or (2) Is directed by the offeror to a place in [Georgia] and received at the place to which it is directed." *Id.* § 10-5-79(c).

by soliciting business from Edwards and Barker. *See* FAC, ¶¶ 16, 38. Further, Plaintiffs allege that BOKF assisted in these fraudulent activities to protect Lawson's reputation and to continue receiving additional trusteeships (which include commissions and other financial contributions) from Lawson. *See id.* ¶¶ 82, 120, 131.

The Georgia Blue Sky Law states that a person is "liable jointly and severally with and to the same extent as persons liable under" GA. CODE ANN. § 10-5-58(b) when that person "is an employee of *or* associated with a person liable under subsections (b) . . . of this Code section and who materially aids the conduct giving rise to the liability." GA. CODE ANN. § 10-5-58(g) (emphasis added). Plaintiffs' First Amended Complaint specifically alleges that BOKF was "associated with" Lawson and Cantone in Brogdon's and Edwards' Ponzi-like scheme—which is all that is needed to survive this Motion to Dismiss. *Cf. Lorenz v. CSX Corp.*, 736 F. Supp. 650, 660 (W.D. Pa. 1990) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

In its final argument, BOKF claims that Plaintiffs did not assert any allegations that BOKF materially aided Lawson in the offer or sale of the Bonds. Plaintiffs assert that they have included several allegations that sufficiently demonstrate how BOKF materially aided Lawson in the offer or sale of the Bonds. *See, e.g.*, FAC, ¶¶ 16, 38, 82, 120, 131. But even if those allegations are not sufficient to establish that BOKF materially aided Lawson in the *offer or sale* of the Bonds, Plaintiffs are only required to allege that BOKF materially aided in "*the conduct* giving rise to the liability" under GA. CODE ANN § 10-5-58(b). *See* GA. CODE ANN. § 10-5-58(g) (emphasis added).[25]

The unlawful "conduct" in this case consists of, among other things, the fraudulent misrepresentations and omissions by Edwards, Barker, and Lawson prior to the sale of the Bonds.

---

[25] *See also Trimble*, 2011 OK CIV APP 85, ¶¶ 20–33, 259 P.3d 850, 856–60 (applying language similar to that of the Georgia Blue Sky Law); *State ex rel. Goettsch v. Diacide Distribs.*, 561 N.W.2d 369 (Iowa 1997) (same).

Importantly, BOKF's silence may have violated multiple laws in Georgia. *See id.* § 23-2-53. But regardless, Plaintiffs allege that BOKF agreed to be Indenture Trustee for the Edwards Offerings (1) to protect the other fraudulent players in Brogdon's Ponzi-like scheme, including Lawson, and (2) in expectation of receiving additional trusteeships (which include commissions and other financial contributions) from Lawson and Brogdon.   Accordingly, Plaintiffs' First Amended Complaint specifically alleges that BOKF materially aided Brogdon, Edwards, Barker, Lawson, and Cantone.[26]

Finally, as discussed above, BOKF had duties and responsibilities to the Plaintiffs and the proposed Class arising and existing independently of the Trust Indenture.   BOKF violated those duties and responsibilities, associated itself with Brogdon, Edwards, Barker, Lawson, and Cantone, and materially aided the "conduct giving rise to the liability" under the Georgia Blue Sky Law.

### III.  CONCLUSION

Plaintiffs' claims are based on their extra-contractual rights under the common law. Regardless of the law applied—whether it is Georgia, Alabama, Oklahoma, or Florida—Plaintiffs have properly stated causes of action for aiding and abetting fraud; aiding and abetting breach of fiduciary duty; gross negligence; negligence; breach of fiduciary duty; civil conspiracy; and violations of the Georgia Blue Sky Law.   Plaintiffs respectfully request that the Court permit this important case to proceed to a full and fair adjudication on the merits by denying BOKF's Motion to Dismiss.

---

[26]  BOKF cited several cases that do not discuss Georgia law or deal with interpretations of language similar to that in the Georgia Blue Sky Law. *See, e.g., Benton v. Merrill Lynch & Co.*, 524 F.3d 866 (8th Cir. 2008) (requiring that party materially aid in the sale, not the conduct); *Lopes v. Vieira*, 543 F. Supp. 2d 1149 (E.D. Cal. 2008) (same); *In re Nat'l Century Fin. Enters. Inc*., No. 2:03-md-1565, 2006 WL 2849784, at *10 (S.D. Ohio Oct. 3, 2006) (same) *Boomershine v. Lifetime Capital, Inc.,* No. 22179, 2008 WL 54803, at *2 (Ohio Ct. App. Jan. 4, 2008) (same).   These cases are irrelevant to the issue currently before the Court.

Respectfully submitted,


s/Andrew R. Davis
Randall K. Calvert, OBA #14154
Rabindranath Ramana, OBA #12045
Andrew R. Davis, OBA #32763
CALVERT LAW FIRM
1041 NW Grand Boulevard
Oklahoma City, Oklahoma 73118
Telephone: (405) 848-5000
Facsimile: (405) 607-3070
E-mail: rcalvert@calvertlaw.com
          rramana@calvertlaw.com
          adavis@calvertlaw.com

          -and-

Nicholas J. Taldone, Esq.
9020 Rancho Del Rio Dr., Suite 101
New Port Richey, FL 34655
FBN: 102598
Telephone: (727) 375-0390
Fax: (727) 494-1036
Primary E-mail: taldonelaw@msn.com
Secondary E-mail: taldonenick@gmail.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of May 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record here:

Frederic Dorwart
fdorwart@fdlaw.com

James Allen Higgins
jhiggins@fdlaw.com

Jared Michael Burden
jburden@fdlaw.com

Nora Rose O'Neill
noneill@fdlaw.com

*Attorneys for Defendant BOKF, NA,*
*d/b/a Bank of Oklahoma*

s/Andrew R. Davis
ANDREW R. DAVIS

X:\Data\LIT\BOKF\Pldgs\Def MTD\Response to MTD\2017-05-08 Pls Rsp to BOKF MTD (Fnl).wpd